# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUANITA MUKUI** and **STANLEY MUKUI**, *Plaintiffs* v. **ANNA CHAU**, Philadelphia District Director, U.S. Citizenship & Immigration Services, **KENNETH T. CUCCINELLI**, Acting Director of USCIS, **CHAD F. WOLF**, Acting Secretary, U.S. Department of Homeland Security,[1] **WILLIAM BARR**, U.S. Attorney General, *Defendants* | Case No.   19-cv-03249-JMY |

## MEMORANDUM

**YOUNGE, J.**                                                                                              **JUNE 17, 2020**

Juanita Lea Mukui, an American citizen (hereinafter, "Ms. Mukui" or "Petitioner"), filed an I-130 petition with the United States Citizenship and Immigration Services ("USCIS") on behalf of Stanley Gicharu Mukui, an alien (hereinafter, "Mr. Mukui" or "Beneficiary") (collectively, the "Plaintiffs"), requesting that USCIS grant Mr. Mukui immediate relative status as her spouse.[2] USCIS denied the petition, finding that Mr. Mukui had previously engaged in a sham marriage in violation of 8 U.S.C. § 1154(c). Ms. Mukui appealed that decision to the Board of Immigration Appeals ("BIA"), which ruled that substantial and probative evidence

---

[1] Chad F. Wolf became the Acting Secretary, U.S. Department of Homeland Security, on November 13, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Chad F. Wolf is automatically substituted for Kevin K. McAleenan as a defendant in this suit.

[2] Pursuant to the Immigration and Nationality Act (the "INA"), a United States citizen may petition to have his or her spouse obtain lawful permanent resident status through an I–130 petition. 8 U.S.C. §§ 1151 (b)(2)(A)(i), 1154.

1

supported USCIS's finding that the purpose of Mr. Mukui's prior marriage was to evade the immigration laws of the United States.

Plaintiffs now seek review of the BIA decision, arguing that the decision was arbitrary and capricious, and that the denial violated their due process rights. The parties agree that the material facts of this case are undisputed, and both have filed cross-motions for summary judgment. (Def.'s MSJ and Mem., ECF Nos. 8, 8-1; Plf.'s MSJ and Mem., ECF Nos. 13, 11.) The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons that follow, Plaintiffs' motion will be denied, Defendants' motion will be granted, and judgment will be entered for Defendants.

## I.  BACKGROUND[3]

### A.  *Immigration Statutes and Regulatory Framework*

United States citizens may petition the Government to issue to an alien spouse or relative an immigrant visa pursuant to the procedures set forth in the INA. *See generally* 8 U.S.C. §§ 1151(b), 1154. For an alien spouse of a United States citizen to obtain lawful permanent resident status, the United States citizen spouse must file a Form I-130 Petition for Alien Relative on behalf of the alien spouse beneficiary to classify him or her as an "immediate relative." *Id*. § 1154(a). Immediate relatives—which include children, spouses, and parents of a United States citizen—are not subject to the annual quotas imposed on other family-based immigration classifications and may receive priority over other applicants by immediately applying for lawful permanent resident status. *Id*. § 1151(b)(2)(A)(i).

The United States citizen bears the burden of proving that the alien beneficiary is eligible to receive the benefits of the I-130 petition. *Id*. § 1361; *see Matter of Brantigan*, 11 I. & N. Dec.

---

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.


493, 494 (B.I.A. 1966); *see also Salvador v. Sessions*, No. 18-1608, 2019 WL 1545182, at *3 (E.D. Pa. Apr. 9, 2019) ("The petitioner bears the burden of proving eligibility and can do so by presenting evidence of a valid marriage."). Evidence of a valid marriage revolves around "[t]he central question" as to "whether the bride and groom intended to establish a life together at the time they were married." *Matter of Laureano*, 19 I. & N. Dec. 1, 2-3 (B.I.A. 1983).

When a petition is filed, USCIS conducts an investigation with respect to the matters presented in the I-130 Form, and then decides whether to approve or deny the petition. *See* 8 U.S.C. § 1154(b); *see also* 8 C.F.R. § 204.2. Once a petitioner proves that their relationship with an immediate relative meets the requirements for the approval of an I-130, he or she is generally entitled, as a matter of law, to the approval of the petition. *See* 8 C.F.R. § 204.2. However, the INA bars USCIS from approving visa petitions with respect to an alien who has attempted, conspired, or actually "[e]ntered into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c); *see also* 8 C.F.R. § 204.2(a)(1)(ii) (USCIS "will deny a petition . . . filed on behalf of any alien for whom there is substantial and probative evidence of . . . an attempt or conspiracy" to enter into a fraudulent marriage). This also applies to any prior marriage found to have been entered into for the purpose of evading immigration laws. 8 C.F.R. § 204.2(a)(1)(ii).

To support the denial of an I-130 petition based on a fraudulent marriage, USCIS must find that there is "substantial and probative evidence" that the marriage was a sham. *Matter of Kahy*, 19 I. & N. Dec. 803, 806 (B.I.A. 1988); *see also Salvador,* 2019 WL 1545182, at *3. Substantial evidence is defined as "more than a scintilla, but . . . something less than a

preponderance of the evidence." *Salvador*, 2019 WL 1545182, at *3 (internal quotation marks and citation omitted).[4]

If USCIS gathers what it believes is substantial evidence of marriage fraud, it must issue a Notice of Intent to Deny ("NOID") to the petitioner. 8 C.F.R. § 103.2(b)(8)(iv). The NOID informs the petitioner of "the derogatory information" and provides the petitioner with a chance to rebut it. *Salvador*, 2019 WL 1545182, at * 3; *see also* 8 C.F.R. § 103.2(b)(16)(i). Thus, when the petitioner receives a NOID, "the burden shifts to the petitioner to establish that the beneficiary did not seek non-quota or preference status based on a prior fraudulent marriage." *Matter of Kahy*, 19 I. & N. Dec. at 806-07; *see also Salvador*, 2019 WL 1545182, at *3 ("The petitioner must establish by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading the immigration laws."). If the petitioner submits a response to the NOID to USCIS, the agency evaluates the response and then determines whether the I-130 petition should be approved. *See* 6 U.S.C. § 271(b)(1); 8 C.F.R. § 204.2(a)(1)(ii).

An unfavorable decision of the USCIS may be appealed to the BIA. *See* 8 C.F.R. § 1204.1. An unfavorable decision by the BIA may then be challenged in a federal district court.

B.   *Facts & Procedural History*

Mr. Mukui, who is a native and citizen of Kenya, was admitted lawfully to the United States as a student on August 18, 2005. (Certified Administrative Record ("AR"), ECF No. 7-1 at 83.) On February 28, 2006, Mr. Mukui married Kyeisha McNeill (hereinafter "Ms. McNeill"),

---

[4] The Court notes that on August 23, 2019, less than a month after this action was commenced, the BIA clarified the definition of "substantial and probative evidence" to state that it means "more than a preponderance of evidence, but less than clear and convincing evidence; that is, the evidence has to be more than probably true that the marriage is fraudulent." *Matter of P. Singh*, 27 I. & N. Dec. 598, 598 (B.I.A. 2019). However, USCIS and the BIA applied the correct standard of proof in this case as it was defined at the time of the agency's decision—both USCIS and the BIA found substantial and probative evidence of marriage fraud.

4

a United States citizen. (AR 7-4 at 17.) On April 13, 2007, Ms. McNeill filed a Form I-130 petition on behalf of Mr. Mukui to initiate the process for Mr. Mukui to become a lawful permanent resident of the United States. (*Id*. at 6.) In support of the petition, Ms. McNeill submitted several documents to establish that their marriage was genuine, including a copy of their marriage certificate. (*Id*. at 20-22.)

On August 21, 2007, USCIS interviewed Ms. McNeill and Mr. Mukui in connection with the I-130 petition. (AR 7-3 at 244-52.) The interviewer questioned Ms. McNeill about the circumstances of her marriage to Mr. Mukui. (*Id*. at 248-52.) Toward the end of the interview, Ms. McNeill signed a Request for Withdrawal of I-130 Petition Form (hereinafter, the "Withdrawal Statement"), in which she stated that Mr. Mukui paid her $1,000 to marry her, that they never consummated the marriage, and that they never lived together. (*Id*. at 247.) The Withdrawal Statement was also signed by Ms. McNeill's attorney, who was present during the interview. (*Id*.) On October 29, 2007, USCIS terminated Ms. McNeill's I-130 petition on behalf of Mr. Mukui. (*Id*. at 246.)

Mr. Mukui and Ms. McNeill divorced on December 31, 2007. (AR 7-1 at 100.) Thereafter, Mr. Mukui and Ms. Mukui married on July 18, 2008 in Las Vegas, Nevada. (AR 7 at 115.) On August 20, 2013, Ms. Mukui filed an I-130 petition (hereinafter, the "Petition") on behalf of Mr. Mukui. (*Id*.) In support of the Petition, Ms. Mukui submitted several documents, including three affidavits signed and sworn by Ms. McNeill, in which she retracts the statements she made in the Withdrawal Statement. (AR 7 at 154-58.) Specifically, Ms. McNeill asserts in her 2011 affidavit:

> [T]he interviewing officer began to say things which made me panic. The officer said that our marriage wasn't real and threatened me with jail. He said that if I cooperated with him and signed a paper that I would not go to jail. I was only 19 and I was very scared.

5

> We had a lawyer and the lawyer did not say a word. The lawyer sat behind me and did not say anything. I was confused and scared. At that point, I "cooperated" by saying yes to whatever the officer said. I ended up signing a paper saying [Mr. Mukui] paid me $1000 to marry him. This is not true. However, I felt that if I did not go along with what the officer said, I would be handcuffed then and there and be taken to jail. I later receive [(*sic*)] a paper saying I had withdrawn the petition. I never requested to withdraw the petition knowingly.

(*Id*. at 154.) In addition, Ms. Mukui submitted several affidavits from friends and family attesting to the bona fides of Mr. Mukui and Ms. McNeill's relationship (*see* AR 7 at 182-195), along with additional documentary evidence (*e.g.*, bank records, insurance records, utility records, tax records and photos) (*see* AR 7 at 147-153, 219, 235, 238, 240-268; AR 7-1 at 1-5, 15-56).

On April 22, 2015, USCIS issued a NOID, explaining that the agency intended to deny Ms. Mukui's pending Petition "because the beneficiary has previously sought to be accorded immediate relative classification by a marriage determined by USCIS to have been entered into for the purpose of evading the immigration laws of the United States." (AR 7 at 105.) The NOID provided the Plaintiffs thirty days to respond and submit evidence that might overcome the grounds for the intended denial. (*Id*. at 109.) On May 26, 2015, the Plaintiffs timely responded to the NOID. (*Id*. at 74-91.)

On July 21, 2015, USCIS denied the Petition. (*Id*. at 65-71.) The agency determined that Mr. Mukui was subject to the marriage fraud bar of 8 U.S.C. § 1154(c), and further found that Ms. McNeill's affidavits retracting her admission to marriage fraud were insufficient to overcome her earlier Withdrawal Statement. (*Id*.) USCIS explained:

> The withdrawal and statement made by Ms. McNeill were the main, underlying reasons for the issuance of the NOID. As stated in the NOID, it is unreasonable to believe that Ms. McNeill was unaware that she was withdrawing the petition. The form was clearly marked as "Request for Withdrawal of Petition for Alien Relative (Form I-

6

> 130)" in bold, capital letters.  Moreover, Ms. McNeill did not simply only sign the withdrawal request, but provided a detailed explanation for the withdrawal.  She wrote that she and the beneficiary never consummated the marriage, never lived together, and married only two days after meeting.  Any one of those statements would lead a reasonable person to significantly question the bona fides of a marriage.  Further, Ms. McNeill wrote that she was paid $1000 to marry the beneficiary.
>
> ***
>
> USCIS is of the opinion that Ms. McNeill's withdrawal and statement were accurate and truthful.  Following the withdrawal, Ms. McNeill submitted three affidavits to USCIS claiming that she only submitted the withdrawal request under pressure from the officer.  Outside of these affidavits though, there is no evidence to indicate that the officer exploited Ms. McNeill in anyway.  Ms. McNeill provided the detailed explanation for the withdrawal in her own handwriting.  Ms. McNeill's attorney also was present throughout the interview and even signed the request to withdrawal as a witness.  Surely, if the officer indeed fabricated the statements for Ms. McNeill to sign, the attorney of record would have objected or, at the very least, refused to sign the statement as a witness.

(*Id*. at 67.)

On September 19, 2015, Ms. Mukui appealed the denial of her Petition to the BIA.  (*Id*. at 21-51.)  However, upon *de novo* review of the administrative record, the BIA dismissed the appeal on October 20, 2017, affirming USCIS' determination that Mr. Mukui had entered into his first marriage with Ms. McNeill for the purpose of evading the immigration laws and that 8 U.S.C. § 1154(c) consequently barred approval of Ms. Mukui's petition for her husband.  (*Id*. at 5-8.)  In its decision, the BIA noted, in relevant part:

> We affirm the Director's determination that the withdrawal statement constitutes substantial and probative evidence of marriage fraud between the beneficiary and Ms. McNeill.
>
> ***
>
> On appeal, the petitioner attempts to diminish the probative value of Ms. McNeill's withdrawal statement.  She argues repeatedly that Ms. McNeill did not knowingly withdraw her petition.  In support she references Ms. McNeill's subsequent affidavits in which she stated that she did not read carefully what she signed, and that she felt pressured into writing her reasons for withdrawing the petition.

7

> \*\*\*
> We are not persuaded that the petitioner demonstrated that Ms. McNeill did not knowingly complete and sign the withdrawal statement. As the Director pointed out, the form states in bold letters that the form is a "Request for Withdrawal of Petition for Alien Relative. Ms. McNeill did not simply sign the form, but instead included a detailed reason in her own handwriting for withdrawing the petition. The withdrawal also reflects that Ms. McNeill's legal representative signed as a witness, which indicates that the attorney accompanied Ms. McNeill during the interview and withdrawal process. The attorney's presence counters Ms. McNeill's claim that she did not withdraw the petition knowingly. Additionally, the petitioner did not submit evidence, such as a statement from Ms. McNeill's attorney, to corroborate the claim that Ms. McNeill felt pressured to complete the withdrawal statement.
> \*\*\*
> Finally, the petitioner did not provide sufficient evidence to overcome the Director's section 204(c) finding. The record contains documentation showing that the beneficiary and Ms. McNeill had the same address during the time of their marriage, including banking records, insurance policies, and utility bills. The record also contains affidavits attesting to the validity of the beneficiary's marriage to Ms. McNeill. The affidavits, however, are too general, and do not provide sufficient insight into the bona fide nature of the relationship. In the absence of more specific affidavits concerning the nature of the relationship, the documentation showing the use of the same address does not meet the petitioner's burden to establish that the marriage between the beneficiary and Ms. McNeill was not entered into for the primary purpose of evading the immigration laws.

(*Id*. at 7-8.)

On July 25, 2019, Plaintiffs filed the instant action in this Court. (ECF No. 1.) On January 13, 2020, Defendants filed their motion for summary judgment. (ECF No. 8.) On March 13, 2020, Plaintiffs filed their cross-motion for summary judgment. (ECF No. 13.) Defendants filed a response on April 3, 2020 (ECF No. 14), and Plaintiffs filed their respective response on April 22, 2020 (ECF No. 15). The pending motions are now ripe for review.

## II.     DISCUSSION

Plaintiffs contend they are entitled to summary judgment because the BIA's denial of the Petition (1) was arbitrary and capricious under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, and (2) violated Plaintiffs' due process rights under the Fifth Amendment.  (Plf.'s Mem. at 6-16; *see also* ECF No. 1 ¶¶ 46, 54-55.)  Defendants respond that the denial of the Petition was reasonable, supported by the evidence in the record, and that the agency action is entitled to deference under the APA.  (Def.'s Mem. at 6-8.)  Defendants further contend that there was no due process violation because "the agency afforded [the Plaintiffs] all the process to which they were due."  (*Id*. at 9.)  The Court will first address the applicable standard of review and will then discuss Plaintiffs' statutory and constitutional claims.

### A.     *Standard of Review*

The Court has jurisdiction to review final orders of the BIA—other than orders of removal—under 28 U.S.C. § 1331.[5]  *See Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014).  The Court's review of final decisions of the BIA is governed by the APA.  *See* 5 U.S.C. § 706; s*ee also Elfeky v. Johnson*, 232 F. Supp. 3d 695, 706 (E.D. Pa. 2017) ("While summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency decision is supported by the administrative record and consistent with the APA standard of review because the district judge sits as an appellate tribunal in such cases, the usual summary judgment standard does not apply.").  Under the APA, the Court may set aside an agency's action only if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

---

[5] The Court focuses its review on the BIA's decision to dismiss the appeal (*see* AR 7 at 5-8), which constitutes the final agency action on the Petition.  5 U.S.C. § 704; *see also Embassy of the Blessed Kingdom of God for all Nations Church v. Attorney Gen. U.S.*, 591 F. App'x 161, 164 (3d Cir. 2014).

9

law[.]"  5 U.S.C. § 706(2)(A).  Generally, an agency's action is arbitrary and capricious only where:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

*CBS Corp. v. F.C.C.*, 663 F.3d 122, 137 (3d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Thus, the scope of review under the "arbitrary and capricious" standard is "narrow, and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.  As such, this Court's task in reviewing a BIA decision is "to determine only if a reasonable mind might accept [the evidence] as adequate to support" the BIA's conclusion.  *Smith v. Holder*, 487 F. App'x 731, 733 (3d Cir. 2012) (internal quotation marks and citation omitted); *see also Abdille v. Ashcroft,* 242 F.3d 477, 484 (3d Cir. 2001) (An agency's decision "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." (citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992))); *accord Yitang Sheng v. Attorney Gen. of the United States*, 365 F. App'x 408, 410 (3d Cir. 2010).  Simply put, "[r]eversal is appropriate only where the administrative action is irrational or not based on relevant factors." *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006).  Lastly, in performing this task, the Court is limited to the administrative record.  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should be the administrative record already in existence").

B.     *The BIA's Marriage Fraud Finding Was Supported by Substantial Evidence*

After reviewing the record, the Court concludes that the BIA's finding that Mr. Mukui's marriage to Ms. McNeill was fraudulent was not arbitrary or capricious because that finding was supported by substantial evidence.  Ms. McNeill provided a signed Withdrawal Statement to immigration authorities indicating that she married Mr. Mukui so that he could obtain immigration benefits.  (*See* AR 7-3 at 247.)  In the Withdrawal Statement, Ms. McNeill provided a number of details regarding the circumstances of their marriage, including that Mr. Mukui paid her "$1,000 to marry him."  (*Id*.)  She further stated, in her own handwriting, that they never consummated the marriage, and they never lived together.  (*Id*.)  A statement from a prior spouse indicating that their marriage was fraudulent may constitute substantial and probative evidence to support a finding of marriage fraud.  *See*, *e.g.*, *Fliger v. Kelly*, No. 15-5704, 2017 WL 2720430, at *4-5 (N.D. Ill. June 23, 2017) (ex-husbands written admission that he entered "into the marriage with the beneficiary to assist her in obtaining lawful residence" and that they never lived together was "substantial and compelling evidence that support the government's finding of marriage fraud"); *Kazinetz v. USCIS*, No. 12-81078, 2014 WL 2696575, at *6 (S.D. Fla. June 13, 2014); *Adi v. U.S.*, No. 10-502, 2011 WL 9613, at *7 (N.D. Ohio Jan. 3, 2011); *see also Matter of Isber*, 20 I. & N. Dec. 676, 679 (B.I.A. 1993) (explaining that spouse's admission that she married alien as a favor to help him obtain permanent residency showed that they did not intend to establish a life together as husband and wife when they married).

Plaintiffs specifically argue that the BIA's decision was not supported by substantial and probative evidence because "the BIA blindly relied solely and exclusively on [Ms. McNeill's] [Withdrawal Statement] without considering all of the other relevant evidence in its totality . . . Instead, with no explanation or justification whatsoever, the BIA simply ignored nearly all of the

11

other evidence Plaintiffs presented establishing that the representations made by [Ms. McNeill] in the [Withdrawal Statement] were not, in fact, true." (Plf.'s Mem. at 7.) This Court disagrees.

The Court finds baseless Plaintiffs' contention that the BIA "simply ignored" Ms. McNeill's subsequent affidavits recanting her admission that she was paid to marry Mr. Mukui. The BIA specifically referenced these affidavits in its decision and explained why it discredited the substance contained therein. (*See* AR 7 at 7-8.) Moreover, as indicated above, the mere filing of a subsequent contradictory affidavit does not compel USCIS or the BIA to disregard an earlier affidavit. *See*, *e.g.*, *Kazinetz*, 2014 WL 2696575, at *6 (rejecting challenge to reliance on former spouse's statement of marriage fraud); *see also Adi*, 2011 WL 9613, at *7 (ex-wife's original sworn statement that her marriage to the petitioner was fraudulent is adequate to support the agency's conclusion that the marriage was a sham, and the ex-wife's subsequent affidavit recanting this testimony is not sufficient to compel a conclusion to the contrary). This Court's review of the BIA's decision reveals that the Board did not deny the Petition simply on the basis of a previous finding of marriage fraud; rather, it independently considered Ms. McNeill's original Withdrawal Statement in conjunction with the subsequent affidavits, and concluded that the subsequent recanting affidavits did not diminish the probative value of her original statement. (*See* AR 7 at 7-8); *see also Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (B.I.A. 1990) (requiring that the "district director . . . not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him").[6] Thus, the BIA was permitted to make the credibility determination that Ms. McNeill's Withdrawal Statement was more reliable than her subsequent recantations.

---

[6] Plaintiffs further posit that the subsequent affidavits establish that Ms. McNeill "was an immature 19 year old who felt nervous, scared and intimidated when her truthfulness was challenged by the interviewing officer; that she felt pressure and panicked when the interviewing officer mentioned penalties such as going to jail if she had lied on her I-130 application[.]" (Plf.'s Mem. at 9.) However, in

Similarly, the other evidence (*e.g.*, documentary evidence and affidavits of family and friends) submitted to support the allegation that Mr. Mukui's marriage to Ms. McNeill was not fraudulent is of limited probative value. Plaintiffs contend that "the BIA's consideration of this evidence was so limited in scope that it simply does not provide a rational basis for its decision." (Plf.'s Mem. at 10.) However, the BIA found that this evidence was not "sufficient evidence to overcome the Director's section 204(c) finding." (AR 7 at 8.) The BIA noted that the affidavits were "too general" and did not "provide sufficient insight into the bona fide nature of the relationship." (*Id.*) This Court agrees with the BIA's assessment as the affidavits are conclusory and fail to provide sufficient details that could be verified to indicate a shared life together. (*See* AR 7 at 182-195.) Likewise, this Court agrees with the BIA's finding that "[i]n the absence of more specific affidavits concerning the nature of the relationship, the documentation [(*i.e.*, utility bills, banking records, insurance)] "showing that the use of the same address does not meet the petitioner's burden to establish that the marriage between the beneficiary and Ms. McNeill was not entered into for the primary purpose of evading the immigration laws." (*Id.* at 8.) It follows that the BIA did not err in giving this evidence less weight.

Accordingly, the Court finds that the record supports the BIA's decision, and, in light of Ms. McNeill's Withdrawal Statement and the applicable standard of review, the Court concludes that there was a rational basis for the agency's finding of marriage fraud.

---

reviewing the subsequent recantations, the BIA found no evidence of coercion or duress. (*See* AR 7 at 7 ([T]he petitioner did not submit evidence, such as a statement from Ms. McNeill's attorney, to corroborate the claim that [Ms. McNeill] felt pressured to complete the withdrawal statement.").); *see also F.C.C. v. Schrieber*, 381 U.S. 279, 296 (1965) (there is a presumption that administrative agencies run properly and according to the law). Furthermore, the Court, when reviewing the decision of the BIA, "cannot re-weigh the evidence . . . or substitute its judgment for that of the agency" to reach a different result. *Salvador*, 2019 WL 1545182, at *4 (internal quotation marks and citations omitted).

C.      *Procedural Due Process*

Plaintiffs argue that Defendants violated their due process rights by failing "to provide Plaintiffs with meaningful access to allegedly derogatory information in violation of 8 C.F.R. § 103.2(b)(16)(ii)[.]" (Plf.'s Mem. at 15.)  This regulation prohibits the agency from basing a determination of statutory eligibility on information that has not been disclosed to the applicant or petitioner.  *See* 8 C.F.R. § 103.2(b)(16)(ii).  Specifically, it provides that the petitioner must be shown "[d]erogatory information unknown" to him.  *Id*. at § 103.2(b)(16)(i).  Plaintiffs assert that the agency "made no reference whatsoever to any perceived deficiency in the quality or quantity of the documentary evidence[,]" or identified any deficiency concerning the "submitted affidavits on Plaintiffs' behalf" . . . yet "USCIS then relied on these perceived shortcomings in rendering its ultimate decision denying the I-130 petition." (Plf.'s Mem. at 15.)  Plaintiffs also point out that "the NOID identified certain concerns regarding the authenticity of [Ms. McNeill's] signature" on the Withdrawal Statement, that Plaintiffs requested copies of the documents USCIS relied on in its handwriting analysis, but were "never provided these documents." (*Id*. at 15-16.)  In response, Defendants contend that "USCIS issued a NOID pinpointing Ms. McNeill's statements at the 2007 marriage interview as derogatory . . . [thus,] the agency afforded [Plaintiffs] all the process to which they were due." (Def.'s Mem. at 9.)

Notwithstanding the above, it appears to the Court that Plaintiffs have failed to exhaust their administrative remedies with respect to this claim.  "To exhaust a claim before the agency, an applicant must first raise the issue before the BIA . . . so as to give it the opportunity to resolve a controversy or correct its own errors before judicial intervention." *Bonhometre v. Gonzalez*, 414 F.3d 442, 447 (3d Cir. 2005) (internal quotation marks and citations omitted).  While "exhaustion of administrative remedies is not always required when the petitioner

14

advances a due process claim," where a "due process claim amounts to a procedural error correctable through the administrative process," a petitioner must exhaust his administrative remedies. *Sewak v. I.N.S.*, 900 F.2d 667, 670 (3d Cir. 1990); s*ee also Khan v. Attorney Gen. of U.S.*, 448 F.3d 226, 236 n.8 (3d Cir. 2006).

Here, because the alleged failure to identify or provide derogatory information is a procedural error that could have been corrected through the administrative process, Plaintiffs' failure to pursue this process with the BIA precludes the Court's review. (*See generally* Brief on Appeal, AR 7 at 21-51.) Moreover, even if Plaintiffs had raised this precise issue to the BIA (*see id*. at 39 (noting that Plaintiffs were without access to the Form G-325As upon which the NOID relied)), the Court finds that USCIS complied with the requirements of 8 C.F.R. § 103.2(b). "The regulation does not require the government to turn over the evidence in its primary form; a summary suffices." *Salvador*, 2019 WL 154582, at *6 (citing *Zizi v. Bausman*, 306 F. Supp. 3d 697, 704-05 (E.D. Pa. 2018)). Accordingly, USCIS provided the Plaintiffs with access to all derogatory information through a summary in the NOID denying the subject Petition, with specific emphasis on the Withdrawal Statement. (*See* AR 7 at 105-09.)

Lastly, the Court notes that the BIA performed a *de novo* review of the administrative record. (AR 7 at 5.) The BIA dismissed the appeal in a written decision which detailed its separate review of the administrative record. Notably, the BIA discussed which of the USCIS's conclusions were supported by the record and further concluded that the record contained substantial and probative evidence supporting the agency's marriage fraud finding. Accordingly, Plaintiffs were provided ample due process under the Fifth Amendment.

III.     **CONCLUSION**

After considering all of the record evidence, the Court is unable to say that the decision of the BIA was arbitrary and capricious, unsupported by substantial evidence, constituted an abuse of discretion, or was otherwise not in accordance with the law.  Accordingly, the Defendants' motion for summary judgment on the administrative record is granted and the Plaintiffs' motion for summary judgment on the administrative record is denied.  An appropriate Order follows.

 **IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge

**Judge John Milton Younge**